17-3970-cv
Usov v. Marc Lazar Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 16th day of November, two thousand eighteen.

PRESENT: JOHN M. WALKER, JR.,
PIERRE N. LEVAL,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

---

GEORGY USOV,

　　　　*Plaintiff-Appellee*,

　　v.　　　　　　　　　　　　　　　　　　No. 17-3970-cv

MARC LAZAR INC.,

　　　　*Defendant-Appellant*,

MARC LAZAR,

　　　　*Defendant*.

---

FOR PLAINTIFF-APPELLEE: RICHARD A. ROTH, The Roth Law Firm, PLLC, New York, NY.

FOR DEFENDANT-APPELLANT: MARVIN NEIMAN, Neiman & Maranz P.C., New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED.**

This action is a dispute among diamond merchants, with much of its history occurring in New York City. Defendant-Appellant Marc Lazar Inc. ("MLI") appeals from a final judgment of the United States District Court for the Southern District of New York, in favor of Plaintiff-Appellee Georgy Usov. Usov brought New York state-law claims for breach of contract, unjust enrichment, and account stated, arising out of MLI's purported failure to compensate Usov for his share of the value of diamond collections that Usov and his related entities had consigned to MLI. Following a bench trial, the district court issued a decision on August 10, 2017, finding that Usov had proved his claims for breach of contract and account stated.[1] The district court then considered submissions as to damages and, on August 30, 2017, entered judgment for Usov in the amount of $5,134,672.16. On November 14, 2017, it granted MLI's motion to reconsider, but denied its application to amend the judgment. We otherwise assume the parties' familiarity with the underlying facts and the procedural history of the case.

On appeal, MLI first contends that the district court lacked subject matter jurisdiction. Next, MLI argues that the district court made erroneous findings and improperly weighed certain evidence, resulting in a damages award that was excessive and not justified by the evidence.

"We review the district court's factual findings regarding subject matter jurisdiction for clear error and its legal conclusion as to whether subject matter jurisdiction exists *de novo*." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003). We also review other factual findings made at a bench trial for clear error, with particular deference to credibility determinations. *See Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005). In addition, "we accord great deference to the district court's resolution of evidentiary conflicts, its choices among competing inferences to be drawn from the evidence, and its decision as to what weight to assign particular evidence." *Freedom Holdings, Inc. v. Cuomo,* 624 F.3d 38, 54 (2d Cir. 2010) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

1. Subject Matter Jurisdiction

MLI argues that the district court lacked subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because non-party Elena Harris

---

[1] The district court did not address Usov's unjust enrichment claim because it was duplicative of the claim for breach of contract.

("Harris") was the "real party in interest," and she, like the defendants, is a citizen of New York.[2]  Harris is Usov's daughter, and she was married to Harvey Harris ("Harvey"), who originally owned the diamond assets and died in 2010.  MLI contends that Usov and Harris strategically and collusively named as a plaintiff only Usov, a Russian citizen, so as to maintain diversity of citizenship.

"If subject matter jurisdiction is lacking, the action must be dismissed."  *Oscar Gruss*, 337 F.3d at 193 (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir. 2000)).  Federal courts have diversity-based subject matter jurisdiction over controversies between, *inter alia*, "citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).  "It is firmly established that 'citizens' for purposes of a federal court's diversity jurisdiction 'must be real and substantial parties to the controversy.'"  *Oscar Gruss*, 337 F.3d at 193 (quoting *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460 (1980)).  As a result, "[w]e will not deem [a party's] citizenship controlling when it acts merely as an agent representing the interests of others.  In such a case, the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute."  *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995).

MLI's argument based on *Airlines Reporting* has no application here.  Usov was not a mere agent; he had been the titular owner since well before the dispute arose.  Thus, Usov had a real interest in the diamonds, even if he held them for the eventual benefit of Harris, as Usov's heir and ultimate beneficiary.

In arguing to the contrary, MLI relies on two statements in the district court's opinion which followed the bench trial.  First, the district court stated in the introductory paragraph that Usov "is the father of Elena Harris . . . and seeks judgment on her behalf."  App'x at 385.  Second, the district court made a finding that MLI's owner, Marc Lazar, was not a credible witness and that Harris, "although . . . an interested party," was credible.  App'x at 386–87.  From these statements, MLI contends that the district court found not only that Harris had a financial interest in the litigation, but also that Usov lacked such an interest.  MLI contends that Usov acted solely as Harris's agent for the purpose of creating diversity, which was thus collusively obtained, and was invalid.

The district court statements, however, did not mean what MLI contends.  The district court found that, in 2006, Usov and Harvey formed Pinnacle Trading Limited ("Pinnacle") to receive the diamond assets at issue in this case.  Harvey wished to transfer the assets to Pinnacle because he was concerned about his health.  Usov was the sole owner of Pinnacle, and Harris worked for Pinnacle as a consultant primarily responsible for diamond trading.  Harris—at Usov's direction—met with Harvey and Lazar in 2006 to

---

[2] There is no dispute that the requirements for federal question jurisdiction pursuant to 28 U.S.C. § 1331 were not satisfied.

3

execute a consignment agreement between Pinnacle and MLI, and it was confirmed at that meeting that Pinnacle was the owner of the diamonds. In 2008, Pinnacle transferred the diamonds to Mervia Investments, S.A. ("Mervia"). The district court expressly found that Usov formed Mervia in 2008 and was its sole owner. Then, in 2011, Usov, with Harris's assistance, terminated Mervia and transferred all the diamond assets to himself.

Thus, the district court's statement that Usov sought judgment on behalf of his daughter was clearly only an observation that Harris, as Usov's heir and ultimate beneficiary, would benefit from her father prevailing in this lawsuit. The district court neither stated nor implied that Usov was not the legitimate titular owner with a true interest in preserving the assets placed in his hands by his son-in-law. Rather, the district court found that Usov owned companies that owned the diamond assets from 2006 until 2011 and that he personally owned the assets from 2011 onward—well before the events giving rise to this dispute.

Moreover, as the context of that statement makes clear, when the district court found Harris to be a credible witness notwithstanding that she was an "interested" party, the court was using the term in a broad sense as bearing on her credibility. While it is correct that Harris was "interested" in this litigation in that she stood to potentially benefit financially, it does not follow that she was a "real party in interest" for purposes of diversity jurisdiction. The district court was correct in its conclusion that diversity jurisdiction existed.

MLI's remaining arguments as to subject matter jurisdiction are also unpersuasive. For one, MLI contends that a "presumption of collusion" applies here. Assuming without deciding that this is correct, any such presumption is overcome. As previously stated, the arrangement placing Harvey's diamonds under Usov's ownership, even if made for the benefit of Usov's daughter, was established long before this dispute arose. Usov's ownership thus was not part of a scheme to create diversity of citizenship for litigation purposes.

In addition, MLI suggests in its opening brief—and explicitly argues in its reply brief—that Usov never owned the diamond assets until 2011. In MLI's view, Harvey, and then Harris after Harvey's death, developed a plan to create diversity jurisdiction. In support, MLI points to an email from Mervia's director of investments in 2010 stating that Harris "has been the sole and beneficial owner of [Mervia] since 2008." App'x at 354. The email was inadmissible hearsay, and its author did not testify. The fact that the district court explicitly found that Usov owned Mervia shows that the court considered the hearsay in a bench trial only for what it was worth, and found the contrary of what the email stated on the basis of proper evidence.

We therefore agree with the district court's exercise of subject matter jurisdiction, based on the facts it found.

4

2. Damages

a. Value of Diamond Inventory in MLI's Possession

MLI next contends that the district court's damages award was excessive because the district court made fact-finding errors resulting in a valuation for the diamond assets at issue of approximately $5 million rather than $2 million.

The district court made the following pertinent findings after weighing the evidence.[3] As an initial matter, it bears repeating that the district court specifically found that Harris was a credible witness and that Lazar was not. As a result, it credited Harris's versions of what transpired in certain meetings (which she also audio-recorded) with Lazar in 2012,[4] as well as her accounts of what she and Lazar said but was not captured on the recordings. For example, the district court credited Harris's testimony that, in 2012, MLI prepared a spreadsheet (referred to as "Exhibit 11" at trial) which estimated the market value of the diamond inventory at issue at approximately $5 million.[5] Harris testified that, at a meeting in July 2012, she and Lazar discussed MLI's valuation in Exhibit 11 and that she then "was supposed to do [her] own due diligence and look around and see if we agree on that number." App'x at 97, 401, 419. After the meeting, Harris did her own valuation (referred to as "Exhibit 18"), which was nearly the same as Lazar's $5 million calculation. Harris and Lazar then met again in October 2012, at which time they discussed, among other things, Lazar purchasing Usov's share. In doing so, Harris approvingly referred back to Lazar's 2012 valuation of Usov's two-thirds share as worth approximately $3.2 million, and Lazar reminded Harris that valuing the diamond assets as a whole required adding his one-third share to that figure. Adding the two shares together would equal approximately $5 million. The district court thus found that the agreed market value of the diamonds was approximately $5 million.[6]

---

[3] The district court made findings and weighed evidence in its opinion following a bench trial, its order entering judgment, and its order denying MLI's motion to reconsider and amend the judgment.

[4] The transcripts of these meetings were before the district court.

[5] The document stated that Usov's two-thirds share was worth around $3.3 million, resulting in a total valuation of approximately $5 million.

[6] MLI's challenges are limited to the district court's weighing of certain evidence and factual findings. And so, it does not argue, for example, that even if the district court properly gave weight to the 2012 valuations, it improperly found that Harris and MLI agreed to a figure. *See, e.g., Abbott, Duncan & Wiener v. Ragusa*, 625 N.Y.S.2d 178, 178 (N.Y. App. Div. 1995) (stating that one of the elements of a claim for account stated is mutual assent to an owed balance). The argument is deemed waived accordingly. *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

MLI advances several arguments for why certain of the district court's findings and weighing of certain evidence were erroneous, none of which is convincing. First, it contends that the district court should have relied instead on a 2008 spreadsheet, which showed a total valuation of only approximately $2 million. MLI contends that "this was the only inventory list ever produced by Usov [or Harris] in the case" and that, because Usov did not disclose a more current amount, this shows that the valuation never changed from 2008. App. Br. at 14. However, the district court found that Lazar himself, and Harris, prepared updated valuations in 2012. It thus was not error for the district court to give little weight to the earlier 2008 valuation.

MLI also argues that the district court erred in relying on Harris's testimony in concluding that Harris and MLI agreed to the valuation set forth in Exhibit 11 and that MLI had prepared it. MLI contends that these conclusions were supported only by Harris's testimony but not by statements in the recordings that Harris had made of some of her meetings with Lazar in 2012. But, even if so, Lazar himself maintained at trial that the "tapes have breaks" and "inaudibles." App'x at 172. Accordingly, it was not error for the district court to credit Harris's testimony about discussion that may not have been audible on the recordings. Moreover, MLI has not shown that the district court clearly erred in finding Harris credible—and Lazar not.

MLI also contends that the valuation Harris and Lazar agreed on at the October 2012 meeting reflected retail (or "asking") prices rather than the market value, which—MLI asserts—would be significantly lower.[7] But MLI does not cite to anything in the record to show how much less the market value would be than the asking or retail prices. MLI also argues that Harris's offer to sell Usov's share for around $1.7 million "cash today" cannot be consistent with the parties having agreed that Usov's share was worth around $3.2 million at market valuation, because the discount would have been too high. In MLI's view, this must have meant that the $3.2 million figure was merely a retail value, that Usov's share was actually worth around $2 million at a (lower) market value, and that the total market valuation of the diamond assets was only around $3 million or less. The district court, however, credited Harris's testimony on this issue. We conclude that the district court did not err as to this conclusion or the others that MLI challenges with regard to the value of the diamond assets.

### b. Bonus for Improving the Red Stone

MLI also contends that the judgment should be reduced by $1.5 million to account for a 33% bonus to which it was entitled for making improvements to the "Red Stone."[8]

---

[7] The parties agree that the damages calculation should be based on market value.

[8] The Red Stone was one of the diamonds that Usov consigned to MLI. MLI contends that it made grading "improvements" to the Red Stone such that it became certifiable pursuant to the Gemological Institute of America and increased in value tenfold.

The district court held that MLI had failed to prove the existence of such an agreement, and it declined to amend the judgment. In support, MLI points to a 2005 email reflecting that Harvey had offered MLI a similar bonus percentage for improving a different stone. MLI also produced an email that Mervia's manager sent to Lazar in 2010, referring to a red stone of a different weight and stating that "[t]he original agreement was for 30% but following colour upgrade of the red stone the participation was to be increased to 33%." App'x at 359. MLI contends that the 2010 email was merely "wrong on the details" and evinces that the parties had agreed to an *additional* 33% bonus for MLI, in addition to the 33% to which it was already entitled. App. Br. at 24–26. The district court found that this evidence was too insubstantial to prove that the parties had agreed to a 33% bonus for work on the Red Stone.

Usov contends that the district court did not clearly err in its weighing of the evidence, and he also points to Lazar's testimony at trial, stating that "we didn't have an agreement" about a bonus. App'x at 135. "We deferred [agreeing] . . . and said let's see how much we actually sell it for." *Id.* In Usov's view, Lazar thus plainly admitted that no bonus agreement had been reached. In its reply, MLI fails to respond to Usov's argument in this regard, thus effectively conceding the point. Given this testimony and the little evidence otherwise, we find no error in the district court's determination that MLI had failed to prove it was entitled to a bonus for improving the Red Stone.

The district court therefore properly granted judgment in favor of Usov in the amount of $5,134,672.16. We have considered MLI's remaining arguments and conclude they are without merit. Accordingly, the order of the district court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7